UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SHAWN BABCOCK,

          Petitioner,

v.

RANDEE REWERTS,

          Respondent.
_____/

Case No. 1:25-cv-1006

Hon. Hala Y. Jarbou

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

**I.      Factual Allegations**

Petitioner Shawn Babcock is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Following a bench trial in the Mason County Circuit Court, Petitioner was convicted of one count of possession of methamphetamine, in violation of Mich. Comp. Laws § 333.7403(2)(b)(1), and one count of resisting or obstructing an officer, in violation of Mich. Comp. Laws § 750.81d(1). *See People v. Babcock*, No. 367406, 2024 WL 4907105, at *1 (Mich. Ct. App. Nov. 27, 2024). The trial court sentenced Petitioner to concurrent sentences of 4 to 20 years' incarceration for the possession conviction and 366 days' to two years' incarceration for the resisting or obstructing conviction. *Id.*

Petitioner appealed his convictions and sentences to the Michigan Court of Appeals. In a counseled brief, Petitioner raised the following claims of error: (1) the trial court erred by denying Petitioner's motion to suppress; (2) the prosecution did not present sufficient evidence to convict Petitioner of resisting or obstructing a police officer; and (3) Petitioner was entitled to additional jail credit or a remand for additional fact-finding regarding the correct amount of jail credit due. *See id.* at *1, 3, 4. In a *pro per* supplemental brief, Petitioner averred that the trial court violated his Fifth Amendment rights "by proceeding to trial without first requiring that the prosecution obtain an indictment from a grand jury." *Id.* at *4.

The Michigan Court of Appeals set forth the following facts underlying Petitioner's convictions:

> This case began when the car in which [Petitioner] was a passenger was pulled over for a defective taillight. The officers had prior encounters with [Petitioner] and knew that he had a history of being associated with methamphetamine. The police noticed [Petitioner] was holding a Leatherman Multitool,[1] and because, in the officers' experience, methamphetamine users could experience paranoia and

2

engage in erratic behavior, the police decided to have [Petitioner] exit the vehicle so they could search for weapons. While [Petitioner] exited the car and put down the multitool, he refused to comply with the pat down, yelling and resisting to the point that the police had to physically force him against the car to conduct the search. The police found a meth pipe in [Petitioner's] pocket.

―――――――――

[1] This is a foldable device that has several tools such as knives, screwdrivers, and scissors inside of it.

*Id.* at *1.

On November 27, 2024, the court of appeals rejected all of Petitioner's arguments and affirmed his convictions and sentences. *See id.* Michigan Supreme Court denied Petitioner's application for leave to appeal on June 27, 2025. *See People v. Babcock*, 21 N.W.3d 870 (Mich. 2025). Petitioner did not seek certiorari from the United States Supreme Court.

On August 25, 2025, Petitioner filed an unsigned federal habeas corpus petition. (ECF No. 1.) Petitioner filed a signed federal habeas corpus petition on September 8, 2025. (ECF No. 3.) Petitioner raises the following three grounds for relief:

> I. The trial court erred in denying [Petitioner's] motion to suppress evidence found during the pat down search, on grounds that the search violated the Fourth Amendment.
>
> II. The conviction is without legal sufficient evidence for the charge of resisting, obstruct[ing], or opposing a lawful police order, therefore, the conviction is a violation of [Petitioner's] Fourteenth Amendment [rights].
>
> III. [Petitioner's] Fourteenth Amendment [rights were] violated when the sentencing court refused to give him the 240 days of jail credit he earned.

(§ 2254 Pet., ECF No. 3, PageID.23–28 (capitalization corrected).)

**II.  AEDPA Standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a

3

state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a

4

habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the

underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Discussion

#### A. Ground I—Fourth Amendment Issue

As his first ground for relief, Petitioner contends that the "trial court erred in denying [Petitioner's] motion to suppress evidence found during the pat down search, on grounds that the search violated the Fourth Amendment." (§ 2254 Pet., ECF No. 3, PageID.23.)

Typically, Fourth Amendment search and seizure issues are not cognizable on habeas review under *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

For the *Stone* doctrine to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state court

determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

It is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Indeed, Petitioner acknowledges that he took advantage of that mechanism by filing a motion to suppress. Petitioner also has not alleged any facts showing that the State's mechanism had broken down—and he cannot. Petitioner filed his motion to suppress, which the trial court denied. Petitioner challenged the denial of his suppression motion on direct appeal, and the court of appeals affirmed the denial of the suppression motion in a thorough discussion. *See Babcock*, 2024 WL 4907105, at *1–2. Even if this Court were to disagree with the state courts' determination regarding the outcome of Petitioner's suppression motion, that disagreement would be insufficient to satisfy the second prong of the *Stone* standard. *See Gilbert*, 763 F.2d at 824.

In sum, because Petitioner has failed to demonstrate either prong of *Stone*, his Fourth Amendment claim is barred from federal habeas review.

**B.    Ground II—Sufficiency of the Evidence**

As his second ground for relief, Petitioner contends that the prosecution did not present sufficient evidence for the trial court to convict Petitioner of resisting or obstructing an officer. (§ 2254 Pet., ECF No. 3, PageID.27.) Petitioner argues that he "never pulled away from the officer tried to flee, or engage in any violence in any way that would suggest that he resisted; [Petitioner] simply exercised his right not to be forced to an unwarranted search, only because there was no probable cause for the search." (*Id.*)

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found

7

the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the following standard to resolve Petitioner's sufficiency challenge:

> We review de novo a challenge to the sufficiency of the evidence. *People v. Williams*, 268 Mich. App. 416, 419; 707 N.W.2d 624 (2005).
>
>> When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. All

8

> conflicts in the evidence must be resolved in favor of the prosecution. [*Id.* (citations omitted).]

*Babcock*, 2024 WL 4907105, at *3. Although the court of appeals cited state authority as the source of the standard, *Williams* cites to *People v. Wolfe*, 489 N.W.2d 748 (Mich. 1992). *Wolfe* identifies *Jackson* as the source of the standard. *See Wolfe*, 489 N.W.2d at 751.

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the Michigan Court of Appeals applied the correct standard—here *Jackson* rather than *Strickland*—Petitioner can only overcome the deference afforded state court

9

decisions if the determination of Petitioner's sufficiency of the evidence claim is an unreasonable application of *Jackson* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d).

The Michigan Court of Appeals first set forth the elements for resisting or obstructing a police officer, and also set forth the definition of "obstruct." *See Babcock*, 2024 WL 4907105, at *3. The court of appeals then applied the sufficiency standard as follows:

> With regard to the first two elements, it was undisputed that [Petitioner] knew that the person giving him commands was a police officer performing his duties. At the bench trial, [Petitioner] argued that he was compliant when Officer Gilmurray asked him to exit the vehicle. However, [Petitioner] now argues that he resisted and obstructed only *unlawful* orders or commands of the police. In other words, [Petitioner] does not dispute that he obstructed a police officer, but asserts that doing so was permissible because the commands were unlawful.
>
> The prosecution must "establish that the officers' actions were lawful as an element of resisting or obstructing a police officer under MCL 750.81d." *People v. Quinn*, 305 Mich. App. 484, 491; 853 N.W.2d 383 (2014) (quotation marks and citation omitted). In his brief, [Petitioner] states that "the statute suggests that if the defendant does not know [that the officers' actions] are lawful then he can resist arrest. Therefore, if an officer's actions could cause a person to reasonably believe that his actions are not lawful, this would be a defense to the charge." Put differently, [Petitioner] suggests that his subjective belief whether the actions or commands were lawful is sufficient to establish a defense to a charge of obstructing a police officer.
>
> The primary goal of statutory interpretation is to effectuate the intent of the Legislature. *People v. Gardner*, 482 Mich. 41, 50; 753 N.W.2d 78 (2008). When the statute's language is clear, judicial interpretation is not permitted, and courts apply the plain language of the statute. *People v. Roseburgh*, 215 Mich. App. 237, 239; 545 N.W.2d 14 (1996). Contrary to [Petitioner's] argument, there is nothing in the statute to suggest that a person lawfully resists if that person reasonably believes that police actions are unlawful. [Petitioner] relies on *People v. Moreno*, 491 Mich. 38, 41; 814 N.W.2d 624 (2012) to support his position. However, the issue in *Moreno* was whether MCL 750.81d abrogated the common-law right for an individual to resist an unlawful arrest when police officers illegally forced their way into the defendant's home without a warrant and no exception to the warrant requirement applied. *Id.* at 43. According to *Moreno*, Mich at 51–52, and *Quinn*, 305 Mich. App. at 492, "the prosecution must establish that the officers' actions were lawful" as an element of resisting or obstructing a police officer.

10

> In this case, when viewed in a light most favorable to the prosecutor, the evidence established that the officers' actions were lawful. As discussed, the record establishes that the police performed a valid traffic stop of the vehicle in which [Petitioner] was a passenger, that the police had valid reasons to order [Petitioner] to exit the car and to perform a pat down, and that the police lawfully removed the meth pipe from [Petitioner's] clothing. Therefore, prosecution presented sufficient evidence that [Petitioner] resisted lawful police actions and commands.

*Babcock*, 2024 WL 4907105, at *3–4 (cleaned up). The court of appeals' analysis appears to faithfully track the requirements of *Jackson*. The court reviewed the elements that the prosecutor was required to prove and then looked at the evidence presented to see if there was a basis for a rational trier of fact to find that the essential elements were proven beyond a reasonable doubt.

Here, Petitioner essentially reiterates the argument that he raised before the appellate court—that he could not have been found guilty of resisting because officers did not have probable cause to conduct the patdown search. (§ 2254 Pet., ECF No. 3, PageID.27.) However, any argument by Petitioner that under the statute in question, a subjective belief that the order in question was unlawful is sufficient to establish a defense to the charge, is not cognizable under federal habeas review. As set forth above, the Michigan Court of Appeals concluded, as a matter of state law, that there is nothing in the statute to support such an argument. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Furthermore, as discussed *supra*, *Stone v. Powell* precludes this Court from revisiting the merits of Petitioner's Fourth Amendment argument.

Moreover, the appellate court's recitation of the facts in evidence relating to the order given by officers is "presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016). Petitioner can overcome that presumption with clear

11

and convincing evidence; he has not. He does not offer any evidence to show that the court of appeals' factual determinations are unreasonable on the record.

Similarly, Petitioner fails to demonstrate that the inferences identified by the court of appeals are unreasonable. *Jackson* holds that it is the fact-finder's province to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The *Coleman* Court described a reasonable inference as an inference that a rational factfinder could make from the facts. The inferences identified by the court of appeals rationally flow from the underlying facts. The inferences are not compelled by those facts. The inferences may not even be more likely than not; they are simply rational. *Id*. at 656. Nothing more is required. Petitioner offers the Court nothing to suggest that the appellate court's inferences were irrational. Thus, Petitioner has failed to demonstrate that the court of appeals' determination that there was sufficient evidence to support the resisting and obstructing conviction is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on habeas ground II.

### C.     Ground III—Jail Credit

As his third and final ground for relief, Petitioner contends that the trial court violated his Fourteenth Amendment rights by "refus[ing] to give him the 240 days of jail credit he earned." (§ 2254 Pet., ECF No. 3, PageID.28. Petitioner raised this argument on direct appeal, and the court of appeals rejected it, stating:

> The statute addressing jail credit for time served while awaiting sentencing provides:
>
>> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond *for the offense of which he is convicted*, the trial court in imposing sentence shall specifically grant credit against the

> sentence for such time served in jail prior to sentencing. [MCL 769.11b (emphasis added).]
>
> During the sentencing hearing, [Petitioner] argued that the credit of 133 days was incorrect, and the trial court decided that [Petitioner] was entitled to an additional 51 days of credit for the time he served from May 22, 2022—the day of the arrest—until July 12, 2022, which brought the total credited days to 184. However, [Petitioner] argues that he should have been credited for 242 days instead of 51 days (a total of 375 days) for the period from May 2022 until January 2023. The trial court ruled that [Petitioner] was not entitled to more credit for those days because defendant was sentenced to 12 months in jail for another offense on July 12, 2022, which he served until January 2023.
>
> On appeal, [Petitioner] argues that the calculation of 184 days is inconsistent with the register of actions, but it is apparent that [Petitioner] has confused the sentencing day for another case on July 12, 2022, with the arrest-bond date information on the PSIR in the current case. For clarity, [Petitioner] was arrested in this case on May 22, 2022; [Petitioner] was then sentenced to 12 months in jail for a different offense on July 12, 2022. Our Supreme Court has explained that "[t]o be entitled to sentence credit for presentence time served, a defendant must have been incarcerated '*for the offense of which he is convicted.*'" *People v Prieskorn*, 424 Mich. 327, 340; 381 N.W.2d 646 (1985), quoting MCL 769.11b (emphasis added). Additionally, this Court has held that a defendant is not entitled to jail credit when incarcerated for another offense. *People v. Patton*, 285 Mich. App. 229, 239; 775 N.W.2d 610 (2009). For the same reasons, [Petitioner] is not entitled to credit for the July-January period during which he was serving a sentence for another crime.

*Babcock*, 2024 WL 4907105, at *4.

Although Petitioner relies upon the Fourteenth Amendment to support his jail credit claim, there is simply no constitutional right to receive credit against a sentence for time served in pretrial detention. *See Grays v. Lafler*, 618 F. Supp. 2d 736, 747 (W.D. Mich. 2008) ("A prisoner has no right under the federal constitutional to earn or receive sentencing credits."). Instead, as noted by the court of appeals, Petitioner's right to any jail credit is under Mich. Comp. Laws § 769.11b.

13

As this Court has repeatedly stated,[1] the question of entitlement to jail credit under § 769.11b is a question of state law. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Because Petitioner's jail credit challenge derives from state law, it is not the province of this Court to re-examine state law determinations regarding state law questions. *See Bradshaw*, 546 U.S. at 76; *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). As set forth above, the decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright*, 464 U.S. at 84 (1983). Accordingly, the court of appeals' conclusion that Petitioner is not entitled to additional jail credit is binding upon this Court. The state courts' rejection of this argument is axiomatically correct. Petitioner, therefore, is not entitled to relief with respect to habeas ground III.

## IV.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under

---

[1] *See Phillips v. Rewerts*, No. 1:19-cv-842, 2021 WL 2301952, at *18 n.2 (W.D. Mich. May 3, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 2291904 (W.D. Mich. June 4, 2021).

*Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated: September 19, 2025          /s/ Hala Y. Jarbou
                                   HALA Y. JARBOU
                                   CHIEF UNITED STATES DISTRICT JUDGE